```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID HAWKINS,                  :   CIVIL ACTION
                                :   NO. 19-5288
        Plaintiff,              :
                                :
    v.                          :
                                :
CITY OF PHILADELPHIA            :
d/b/a PHILADELPHIA POLICE       :
DEPARTMENT, et al.,             :
                                :
        Defendants.             :
```

A M E N D E D   M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        November 30, 2021

## I.  INTRODUCTION

Plaintiff David Hawkins alleges his employer, Defendant City of Philadelphia (the "City"), subjected him to a hostile work environment in violation of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA"). He also names his supervisor, Danielle Imes, as a Defendant. Plaintiff alleges Defendants discriminated against him because of his gender/sexual orientation.

Defendants now move for summary judgment. For the following reasons, Defendants' motion will be denied.

## II.  BACKGROUND

Plaintiff, who is openly gay, began working for the City of Philadelphia in the Police Department's Office of Forensic Science's Criminalistics Unit (the "Department") in 2008. He

started as a biologist trainee in the DNA laboratory and now holds the title of forensic scientist. Plaintiff routinely receives satisfactory performance evaluations and positive feedback about his work. Danielle Imes, a laboratory supervisor, has supervised Plaintiff since 2008.

In March 2012, Plaintiff informed the forensic laboratory manager that his colleagues were harassing him because of his sexual orientation. He described harassing incidents dating back to 2009. Plaintiff also provided his then-manager with a copy of notes he maintained that outlined the details and dates of the alleged incidents. For example, Plaintiff alleged that three co-workers would bang on and throw a tennis ball against his cubicle wall while yelling his name in an effeminate manner. In response to Plaintiff's report, management communicated the allegations to the Department's Internal Affairs Unit, arranged for sexual harassment training, and distributed a memorandum about diversity and respect in the workplace. The Department informed Plaintiff of these efforts.

In December 2012, Plaintiff brought another complaint to management alleging that his colleague posted photographs that were intended to harass Plaintiff about his sexual orientation. Plaintiff alleged that about six months after he started working in the unit, a poster of American Idol contestant Sanjaya Malakar was displayed over the co-worker's desk. Plaintiff

2

contends that the depiction "was meant to mock and/or embarrass" Plaintiff, as "Sanjaya is an offensive term used to refer to an effeminate, weak, and/or cowardly man." Am Compl. ¶ 15, ECF No. 13; Plaintiff Dep. 55: 12-24; 56: 1-16, ECF No. 33-2. Plaintiff alleges that the co-worker who displayed the poster made references to "Sanjaya" while using an effeminate tone and contends that co-worker's use of the term "Sanjaya" was a code name for "gay."[1] That co-worker placed on Plaintiff's desk a photograph of the co-worker hugging another man.

Plaintiff removed the poster of Sanjaya Malakar from the co-worker's desk. A different co-worker drew a picture of Sanjaya Malakar wearing a dress, and it hung it in the place of the original poster. The Department's Internal Affairs Unit conducted an investigation and interviewed thirty-six different individuals. The Department's Internal Affairs investigation concluded that some of Plaintiff's allegations were unfounded but that the co-worker who drew the picture violated administrative policies. After the investigation, management confiscated the photographs that appeared to violate

---

[1] Plaintiff contends that according to UrbanDictionary.com, a at the time of the investigation, the term "Sanjaya" was a "synonym" and "code name" for "gay." Pl. Stmt. of Add. Material Facts ¶ 11, ECF No. 59-3. UrbanDictionary.com is a widely referenced site that includes crowdsourced definitions for slang words and other phrases.

administrate policies and distributed a memorandum reiterating its diversity policies.

Plaintiff testified at his deposition that after the Department initiated the Internal Affairs investigation, he regularly heard co-workers make inappropriate comments. Plaintiff alleges he walked into a conversation in 2014 where co-workers made a statement about setting someone on fire, which Plaintiff interpreted as referring to him. He also overheard the following comments: "you don't have to like him, but you do have to work with him" and "how else are you going to kill a witch you got to burn him." Defs.' Stmt. Material Facts ¶ 40(c), (f), ECF No. 33-1.

Plaintiff further alleges that sometime after 2012, he heard co-workers say homophobic slurs and phrases such as "faggot" and "no homo" in voices loud enough for Plaintiff to hear while Plaintiff was at his desk or walking through the office. Id. ¶ 28; Pl.'s Stmt. of Add. Material Facts ¶ 16, ECF No. 59-3. Plaintiff believes the same co-workers involved in the prior incident said the slurs. Plaintiff recalls three specific incidents in 2015 involving homophobic slurs which he did not report to management. First, in January 2015 he overheard a co-worker say, "only faggots wear skinny jeans." Defs.' Stmt. Material Facts ¶ 31(a). Second, in January 2015 he heard the slur "faggot" from the other side of a wall but does not know

4

who said it. Id. ¶ 31(c). Finally, in March 2015 he heard a co-worker whisper the same slur when Plaintiff walked into an administrative room to retrieve a document from the printer.

In 2016, Plaintiff reported several instances of alleged harassment to his laboratory manager. He complained that two co-workers would laugh and grin at Plaintiff when leaving the office. He also alleged that a co-worker made a slapping gesture indicating he was going to slap Plaintiff in the back of his head. He explained that when Plaintiff was sitting in the back of the room during a training, four employees turned to look at him and started laughing uproariously. Plaintiff testified that, also in 2016, he overheard a co-worker suggest that another co-worker return from her travels with a voodoo doll they could use when someone in the office made a "stupid comment," which he interpreted as referring to him. Pl.'s Stmt. of Add. Material Facts ¶ 40.l, ECF No. 59-3.

In 2018, Plaintiff reported to the laboratory manager that Imes, Plaintiff's direct supervisor, created a hostile work environment by singling him out in meetings. Plaintiff testified that in 2019 he heard Imes say "faggot" loudly enough for Plaintiff to hear before she entered his workspace. According to Plaintiff, this incident caused him anxiety and made it difficult for him to focus on his work. Also in 2019, as Plaintiff walked through an area where a meeting was happening,

5

Plaintiff heard Imes say, loudly and pointedly, "It's National Slap Your Irritating Co-Worker day." Id. ¶ 9. Plaintiff reported Imes's 2019 remarks, and an internal investigation into the alleged remarks is pending.

Plaintiff maintains that Imes had displayed a discriminatory attitude against Plaintiff for years. Plaintiff alleges that in 2012 Imes would suddenly break out into show tunes only after Plaintiff walked into a given room and that in 2015 she used a lavender font color in an email, which Plaintiff described as a "gay color." Defs.' Stmt. Material Facts ¶ 40(j). He testified that Imes routinely ostracized him by signaling to others that they should be quiet because Plaintiff was approaching. He alleges Imes used the phrase "tippy-toe" to signal a change in subject, and that she singled him out for aggressive questioning in morning meetings. Pl.'s Stmt. of Add. Material Facts ¶ 7, ECF No. 59-3.

Plaintiff experiences Post Traumatic Stress Disorder. He has received treatment for the disorder since 2010 and believes it has been caused by the allegedly hostile work environment.

Plaintiff filed the instant action in 2019. Defendants note that the Amended Complaint alleges violations of Title VII and the PHRA but does not identify specific theories of liability. Defendants interpret the Amended Complaint as bringing claims for (1) discrimination, (2) hostile work environment, and (3)

retaliatory hostile work environment, and they move for summary judgment on all claims. In response, Plaintiff indicated that he "respectfully withdraws [his] claim[s] for discrimination and retaliatory hostile work environment to the extent [his] Complaint asserts such claims." Pl.'s Resp. to Defs.' Mot. Summ. J. 10, ECF No. 59. Accordingly, the Court will only address the remaining hostile work environment claim.

### III. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Physicians Healthsource, Inc. v. Cephalon, Inc., 954 F.3d 615, 618 (3d Cir. 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A factual dispute is genuine if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. If the movant meets this obligation, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. At the summary judgment stage, the Court must view the facts "in the light most favorable to" the

7

nonmoving party and "draw all reasonable inferences in favor" of that party. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir. 2015) (citing Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011)).

**IV. DISCUSSION**

A plaintiff bringing a Title VII[2] hostile work environment claim must show that the workplace at issue was "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"

---

[2] Generally, "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) (citing Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996)). However, the language of the PHRA does not explicitly prohibit discrimination on the basis of sexual orientation. See 43 P.S. § 952(b) (prohibiting employment discrimination on the basis of "race, color, religious creed, ancestry, age, sex, national origin, handicap or disability, use of guide or support animals because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals"); see also Manocchio v. Children's Serv. Cntr. Of Wyoming Valley, No. 6-710, 2007 WL 575690, at *3 n.3 (M.D. Pa. Feb. 28, 2007) (same). Regardless, a plaintiff is entitled to protection under the PHRA if "discrimination suffered is 'based on gender stereotypes'" as it is considered sex-based discrimination. Eure v. Friends' Central School Corp., No. 18-1891, 2019 WL 3573489, at *4 (E.D. Pa. Aug. 5, 2019) (citing Semian v. Dep't of Military & Veterans' Affairs, No. 17-1183, 2018 WL 4038116, at *5 (M.D. Pa. Aug. 23, 2018)). Neither party contests the PHRA's application to this context.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

When determining whether a plaintiff has established these elements, courts must evaluate the record "as a whole," concentrating "not on individual incidents, but on the overall scenario." Cardenas v. Massey, 269 F.3d 251, 261 (3d Cir. 2001) (quoting Durham Life Ins. Co. v. Evans, 166 F.3d 139, 149 (3d Cir. 1999)). "'[O]ffhanded comments, and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

To establish a hostile work environment claim, a plaintiff must show: "(1) [H]e suffered intentional discrimination . . . ; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [him]; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist., 971 F.3d 416, 428 (3d Cir. 2020) (quoting Komis v. Sec'y of U.S. Dep't of Labor, 918 F.3d 289, 293 (3d Cir. 2019)).

Although Defendants do not challenge Plaintiff's ability to establish the third and fifth prongs of this analysis, they argue the record cannot support the remaining prongs because:

9

(A) Plaintiff cannot point to record evidence that he suffered intentional discrimination based on his gender or sexual orientation; (B) the alleged conduct was not severe or pervasive; and (C) the alleged conduct would not have detrimentally affected an objectively reasonable person under similar circumstances. These arguments are addressed in turn.

### A.  Whether Plaintiff Suffered Intentional Discrimination

First, Defendants aver that Plaintiff cannot demonstrate that he suffered intentional discrimination because he has not produced any evidence linking most of the incidents to his gender/sexual orientation and the remaining incidents were not directed at him. See Caver, 420 F.3d at 263 (noting that a plaintiff cannot establish the first element of the hostile work environment claim "solely by pointing to comments that were directed at other individuals"). Defendants aver that several incidents "were so innocuous that they raise absolutely no inference of intentional discrimination." Def. Mot. Summ. J. at 9, ECF No. 33.

Defendants cite to Caver for support. In Caver, the Third Circuit affirmed a judgment on a jury verdict in the defendant's favor finding, in part, that the plaintiff could not maintain a claim for hostile work environment because there was no evidence that a racist comment and racist flyers were directed at the plaintiff. 420 F.3d at 263. The Court agrees with Defendants to

10

an extent, but overall finds that Caver is not helpful in this instance.

Several of the incidents that Plaintiff points to here were not directed at Plaintiff and are thus too attenuated to demonstrate that he was subject to intentional discrimination. See, e.g., Whitmore v. National R.R. Passenger Corp., 510 F. Supp. 3d 295, 309 (E.D. Pa. 2020) (dismissing a hostile work environment claim in part because the "comments [plaintiff] highlight[ed] were directed at other individuals.") (citing Caver, 420 F.3d at 262). For example, Plaintiff's allegations that in 2012 his co-worker displayed a poster of Sanjaya Malaker, used the term "Sanjaya," and drew a picture of Sanjaya Malaker wearing a dress are not sufficient to raise an inference of intentional discrimination. There is no evidence that these acts were directed at Plaintiff and are thus an insufficient basis for the Court to infer that Plaintiff was discriminated against. Similarly, Plaintiff's allegation that in 2015 he overheard a co-worker make a comment about setting someone on fire and his allegation that he overheard a co-worker stating "how else are you going to kill a witch you got to burn him" are also insufficient for the Court to infer a basis of

discrimination because there is no evidence that these comments were directed at Plaintiff.[3]

However, evidence that Plaintiff's co-worker and supervisor directed the term "faggot"[4] towards Plaintiff, or used the term within earshot of Plaintiff, raises an inference of intentional discrimination. Plaintiff contends that, on or about early 2012, Plaintiff's co-workers began using the derogatory slur in the workplace. Specifically, in March 2015, Plaintiff heard a co-worker whisper the slur after Plaintiff walked into an administrative area to retrieve a document from the printer.

---

[3] Plaintiff's allegations that in 2016 he overheard a co-worker suggest they could use a voodoo doll on someone when they made a "stupid comment" in the office, Imes's comment that "It's National Slap Your Irritating Co-Worker day," Imes's use of the lavender color font, Imes's use of the phrase "tippy-toe," and Imes's propensity to sing showtunes are also insufficient to support a basis of discrimination because there is no evidence that such comments were directed at Plaintiff.

[4] Though the term "faggot" originally meant a "bundle of sticks," since the early 1900's it has been used as an extremely offensive slur to refer to an openly homosexual man. See Faggot, OXFORD-ENGLISH DICTIONARY, (last updated Sept. 2021), https://www.oed.com/viewdictionaryentry/Entry/67623; see also Faggot, MERRIAM-WEBSTER, (last updated 2021), https://www.merriam-webster.com/dictionary/faggot (noting the word is "used as a term of abuse and disparagement"); Faggot, VOCABULARY.COM, https://www.vocabulary.com/dictionary/faggot (last visited Nov. 29, 2021) (noting the term is used as an extremely offensive slur); Linton Weeks, The Fa-Word: An Insulting Slur in the Spotlight, NPR (May 28, 2011, 4:13 P.M.), https://www.npr.org/2011/05/28/136722113/the-fa-word-an-insulting-slur-in-the-spotlight (explaining that the term has been used in the context of hate crimes and has become an "unacceptable, unsavory and unnecessary epithet[].").

Further, Plaintiff alleges that in 2019, Imes used the slur while walking into Plaintiff's workspace in 2019. Though Imes maintains she used the phrase as part of a song's lyrics while singing a tune, and that she was unaware that Plaintiff was sitting at his desk, Plaintiff disputes this version of events, claiming that Imes used the slur loudly enough for Plaintiff to hear it before she walked into his workspace. See Pl. Dep. 107: 2-24; 108: 1, ECF No. 33-2. With respect to these two incidents, Plaintiff points to evidence that create a genuine dispute of material fact that the slur was directed at Plaintiff.[5]

Further, the Third Circuit has emphasized "the advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom," including incidents that may appear facially neutral. Cardenas v. Massey, 269 F.3d 251, 261-62 (3d Cir. 2001). Thus, evidence that Plaintiff's co-workers used his name in an effeminate manner, laughed at him while in meetings, and performed a gesture to mimic slapping Plaintiff,

---

[5] Plaintiff maintains he heard the slur on at least two other occasions. As noted, in January 2015, Plaintiff overheard a coworker say, "only faggots wear skinny jeans." Defs.' Stmt. Material Facts ¶ 31(a). That same month, Plaintiff alleges he heard the slur "faggot" from the other side of a wall but does not know who said it. Defs.' Stmt. Material Facts ¶ 31(c). Because Plaintiff does not point to any evidence that these comments were directed towards Plaintiff, the Court focuses on the instances from March 2015 and 2019 noted above.

and evidence that Imes would subject Plaintiff to more aggressive questioning than his co-workers may be considered in the aggregate to support a finding that Plaintiff suffered intentional discrimination. Accordingly, Defendants are not entitled to summary judgment on this ground.

### B. Whether the Alleged Discrimination Was Severe or Pervasive

Next, Defendants argue that Plaintiff's claim fails because the incidents he alleges, when considered within the ten-year period at issue, do not amount to severe or pervasive discrimination.

"The 'severe or pervasive' standard requires conduct that is sufficient 'to alter the conditions of [the employee's] employment and create an abusive working environment.'" Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 214–15 (3d Cir. 2017) (alteration in original) (quoting Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 67 (1986)). "[W]hether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 215 (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001)).

The 'severity' and 'pervasiveness' are separate and alternative possibilities. Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017). "Some harassment may be severe enough to contaminate an environment even if not pervasive" while "other, less objectionable, conduct will contaminate the workplace only if it is pervasive.'" Id. (citing Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006)). "Unless extremely serious, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim." Chinery v. American Airlines, 778 F. App'x 142, 145 (3d Cir. 2019) (first citing Caver v. City of Trenton, 420 F.3d 243, 262–63 (3rd Cir. 2005), then citing Castleberry, 863 F.3d at 264)).

Defendants describe some of the alleged incidents, including the incident involving Plaintiff's co-workers laughing at Plaintiff and saying his name in an effeminate manner as "innocuous." Defs.' Mot. Summ. J. at 11, ECF No. 33. Defendants also maintain that the remaining conduct, including the use of homophobic slurs, occurred infrequently so it may not be found to be sufficiently pervasive.

While evidence that Plaintiff's co-workers used his name in an effeminate manner, laughed at him while in meetings, and performed a gesture to mimic slapping Plaintiff, and evidence that Imes would subject Plaintiff to more aggressive questioning than his co-workers is indicative of intentional discrimination,

15

it, by itself, is insufficient to meet the severe or pervasive requirement. See Phillips v. SEPTA, No. 16-0986, 2018 WL 827440, at *6 (E.D. Pa. Feb. 12, 2018) (Robreno, J.) (collecting cases). On the other hand, the Court finds that Plaintiff's allegations that his co-worker and supervisor used the term "faggot" when referring to Plaintiff on at least two occasions is sufficient for a reasonable jury to find that Defendants' conduct was severe. As noted, Plaintiff contends that in March 2015 he heard a co-worker use the slur when Plaintiff walked into an administrative area. Plaintiff additionally avers that in 2019, Plaintiff's direct supervisor, Imes, used the homophobic slur loudly enough for Plaintiff to hear when walking into Plaintiff's workspace.

The Third Circuit has recognized that, in the context of race, even a single instance in which a supervisor uses a discriminatory slur may be severe enough to alter the conditions of one's employment and thus create a hostile work environment. See Castleberry, 863 F.3d at 265 (finding use of a racially charged slur is severe enough to meet the severe or pervasive requirement); Williams v. Cty. of Philadelphia Office of Fleet Mgmt., No. 18-3875, 2020 WL 1677667, at *4 (E.D. Pa. Apr. 6, 2020) (same).[6]

---

[6]  Defendants rely on a number of cases that purport to have dismissed matters with similar allegations. See, e.g., Kay v.

16

In Williams v. Mercy Health Sys., this Court held that evidence that the plaintiff's supervisors used the "n-word" on three occasions was sufficient for a reasonable jury to conclude that the conduct was sufficiently "severe or pervasive" to alter the conditions of the plaintiff's employment. 866 F. Supp. 2d 490, 502 (2012) (Robreno, J.). This Court explained that the "n-word" is "steeped in a racial animus and instantly separates an African-American from everyone else." Id.; see also Castleberry, 863 F.3d at 265-266 (noting that use of a racial epithet such as the "n-word" may create a hostile work environment).

The Court recognizes that Title VII is not prescriptive of good manners, nor does it ban the use of every potential derogatory term, regardless of context, in the workplace. Cf. Casselli v. Dejoy, No. 20-2456, 2021 WL 254554, at *2 (E.D. Pa. Jan. 26, 2021) (finding that the terms "gangster," "cracker," and "old man" were not sufficiently severe to satisfy the severe or pervasive requirement in a case where a white male brought discrimination claims based on race, national origin, and age). However, as noted in Williams, there are certain slurs that are

---

Independence Blue Cross, 142 F. App'x 48, 49, 51 (3d Cir. 2005); Coleman v. Caritas, No. 16-3652, 2017 WL 2423794, at *4-*5 (E.D. Pa. June 2, 2017). However, Kay and Coleman were dismissed because the plaintiffs' claims of discrimination based on sexual orientation prior to the Supreme Court's recognition that Title VII prohibits discrimination based on sexual orientation in Bostock v. Clayton Cnty., 140 S. Ct. 1731 (2020).

17

so "steeped in [] animus" that, when used, can be said to alter the conditions of the workplace regardless of context. 866 F. Supp. at 502. In this case, the term "faggot" is so replete with homophobic animus that, if used, instantly separates an individual who identifies as gay from everyone else in the workplace. Thus, the Court finds that a reasonable jury could conclude that Plaintiff's co-worker and supervisor's reference to Plaintiff as "faggot" in the workplace is sufficiently severe to "change Plaintiff's terms of employment." Id.

Accordingly, the harassment suffered by Plaintiff was sufficiently severe to satisfy this prong of the hostile work environment claim, and so Defendants are not entitled to summary judgment on this ground.[7]

### C. Whether the Conduct Affected a Reasonable Person

Finally, Defendants aver that they are entitled to summary judgment because the alleged conduct would not have detrimentally affected an objectively reasonable person under similar circumstances. In response, Plaintiff contends that Plaintiff has been severely affected by the alleged repeated use of homophobic slurs, including by a direct supervisor, and other harassing conduct in the workplace. Drawing all reasonable

---

[7] Because the conduct at issue is sufficiently severe, the Court need not address whether the conduct is sufficiently pervasive.

inferences in favor of Plaintiff, the Court finds that a reasonable jury could conclude that use of this homophobic slur in the workplace could detrimentally affect a reasonable person in similar circumstances. Accordingly, Defendants are not entitled to summary judgment on this ground.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion will be denied. An appropriate order will issue.